THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, a non-profit corporation,<br><br>        Plaintiff,<br><br>v.<br><br>RAINIER PETROLEUM CORP.,<br><br>        Defendant.<br>_____ | Case No. 14-00829-JLR<br><br>PLAINTIFF'S MOTION TO ENFORCE AND MODIFY CONSENT DECREE AND FOR LEAVE TO CONDUCT DISCOVERY<br><br>Note on Motion Calendar: August 11, 2017 |

## I. MOTION

Plaintiff Puget Soundkeeper Alliance ("Soundkeeper") respectfully requests that the Court hold defendant Rainier Petroleum Corporation ("Rainier") in civil contempt of the Consent Decree entered in this case on March 3, 2016 (Dkt. #100) and order Rainier to pay remedial sanctions and Soundkeeper's attorneys' fees and costs in bringing this motion. Soundkeeper also requests specific modifications to the Consent Decree. Finally, Soundkeeper requests leave to conduct limited discovery to the extent that the Court finds that questions of fact preclude it from granting the requested relief.

## II. INTRODUCTION

This is a citizen suit under the Clean Water Act in which Soundkeeper proved that Rainier violated various provisions of the Clean Water Act permit that authorizes stormwater discharges from Rainier's marine fueling facility at Pier 15 on Seattle's Harbor Island. Dkt. #75. The parties settled the case via a proposed consent decree filed with the Court on January 8, 2016 and entered on March 3, 2016. Dkt. #100. The Consent Decree required that, *inter alia*, Rainier make specific improvements to control stormwater pollution at its facility and make a payment in lieu of a penalty to the Rose Foundation for environmental benefit projects in central Puget Sound. *Id.* This motion concerns Rainier's ongoing noncompliance with paragraph 7(f) of the Consent Decree, which mandated that Rainier cease discharging industrial stormwater from its fueling pier to Elliott Bay by June 30, 2016." Dkt. #100 at 4-5. There is no dispute that Rainier has been in violation of this requirement for over a year and continues to discharge polluted stormwater from Pier 15 to Elliott Bay.

Rainier's lack of diligence and contempt for the Consent Decree are to blame for its ongoing violations. Rainier did not even obtain a bid and apply for a permit to make the required

MOTION TO ENFORCE CONSENT DECREE - 2

improvements to the pier until July 13, 2017 – over a year after the consent decree's deadline for completing the pier work. Any attempt by Rainier to blame third parties for its own delay will not be borne out by evidence and should be rejected.

In addition to prolonging toxic discharges to Elliott Bay, Rainier's compliance delays confer a significant economic benefit on the company. Sanctions, in the form of funding for environmental restoration in central Puget Sound, are warranted to help remediate the environmental harm, recoup Rainier's economic benefit from noncompliance, and deter future violations, all consistent with the Clean Water Act and the Court's civil contempt powers.

Soundkeeper worked with Rainier for months in an attempt to resolve these issues without filing a disputed motion but was ultimately unsuccessful. Without the Court's intervention Rainier will continue discharging toxic stormwater pollution to Elliott Bay into the coming rainy season.

### III.   FACTS

Rainier uses the western half of Pier 15 to dispense and receive diesel fuel and lubricants to and from ships, barges, and other marine vessels. Dkt. #75 at 3. Stormwater from certain diked areas on the pier drains into catch basins, is pumped into the 11,750-gallon oil/water separator tank, and then drains into a sanitary sewer. *Id.* Outside the diked area there are eight small drains covered by grates and one larger hole in the pier, all of which drain directly to Elliott Bay. *Id.* One impetus for Soundkeeper's lawsuit was to abate the polluted discharges from the pier, which Rainier historically did not sample or control with pollution-reducing best management practices. Dkt. #75 at 34; Dkt. #93, ¶ 8

This case was settled through a proposed consent decree filed on January 8, 2016, just a few days before trial was to begin. Dkt. #98. Paragraph 7(f) of the Consent Decree states:

MOTION TO ENFORCE CONSENT DECREE - 3

> Not later than June 30th, 2016, Rainier will implement measures to prevent any stormwater from the portion of Pier 15 (also known as the Facility's fueling dock or pier) on which Rainier operates (approximately the western half of the pier) from discharging to Elliott Bay. Rainier will plug the existing holes in its pier that presently discharge directly to Elliott Bay, install curbs, berms, and/or barriers as required to prevent sheet flow of stormwater from its portion of the pier to Elliott Bay, and otherwise ensure adequate stormwater collection and conveyance infrastructure exists to capture the stormwater from the portion of the pier on which Rainier operates and direct it to the sanitary sewer. Not later than June 30, 2016, Rainier will send Soundkeeper written confirmation describing the measures taken to implement the requirements of this paragraph.

Dkt. #100 at 4-5. Throughout the litigation, Soundkeeper sought to have Rainier collect the pier runoff and direct it to a high quality treatment system at its facility prior to discharging it to Elliott Bay. *See, e.g.,* Dkt. #92 at 21.[1] However, Rainier proposed to direct the pier runoff to the sanitary sewer, claiming that it already had a permit from the sewer authority to do so, and Soundkeeper accepted this as a compromise solution in settlement. Tonry Decl., ¶ 2.

On June 7, 2016, Mike Auer, an employee of Rainier's parent company Maxum, emailed Soundkeeper stating:

> Our path towards satisfying stipulation 7.f. of our agreement requiring this pier water be redirected has been problematic due to parties such as our wastewater permitting agency King County, our landlord Exxon Mobil, and our dock partner Shell. As discussed, we would like to avoid lengthy regulatory difficulties that have very uncertain outcomes, formidable legal challenges from our partners, structural engineering compromises of the pier, and potentially a force majeure situation. With PSK's consent, Maxum's inclination would be to implement operational [best management practices ("BMPs")] to ensure pollutant parameters for all benchmarks are met…

Kinn Decl., ¶9. On June 10, 2016, Soundkeeper responded that it was willing to consider alternatives to directing the pier runoff to the sanitary sewer, but that implementing mere operational BMPs would not be sufficient alone. *Id.,* ¶ 10. The parties discussed the possibility

---

[1] The Consent Decree required Rainier to install such a treatment system for its upland stormwater runoff. Dkt. #100 at 5. Rainier ultimately installed a less expensive system than that called for in the Consent Decree. Kinn Decl., ¶¶ 4, 6.

MOTION TO ENFORCE CONSENT DECREE - 4

of Rainier installing a vessel sewage pump out station as an alternative that would improve water quality in Puget Sound, but this never came to fruition. *Id.*, ¶¶ 9-11, 14-15.

It was not until late 2016 that Rainier collected its first stormwater discharge sample from Pier 15, despite that the Consent Decree required such sampling to occur starting in the first quarter of 2016. Tonry Decl., Ex. 1; Dkt. #100 at 6. The samples from the pier exceeded Clean Water Act permit benchmarks for toxic pollutants zinc and copper by factors of four and twelve, respectively. Tonry Decl., Ex. 1; Dkt. #93 at 10-11 (¶¶52, 56). Meanwhile, Rainier was making no apparent progress or efforts toward capturing and treating or diverting its pier runoff. Kinn Decl., ¶¶ 15-17.

By letter dated January 3, 2017, Soundkeeper invoked the Consent Decree's dispute resolution process and requested a meeting to try to resolve the ongoing violation of paragraph 7(f) of the Consent Decree. Tonry Decl., Ex. 2. During the parties' meet and confer, Rainier asserted that Pier 15's owner, ExxonMobile, declined Rainier's request to modify the dock to allow stormwater collection and that it was not practical to collect the stormwater without modifying the dock. Tonry Decl., ¶ 5. Rainier stated that it did not have a proposal for coming into compliance with the Consent Decree and hoped that Soundkeeper could come up with a solution for these technical issues. *Id.* Rainier ignored Soundkeeper's request for information and documentation of these claims, and steps Rainier could or would take to come into compliance with the Consent Decree. *Id.*, ¶ 6, Ex. 3. Documents recently produced by Rainier show that the company did not have a contractor come on site to assess what it would take to implement paragraph 7(f) of the Consent Decree until sometime in early 2017. *Id.,* Ex. 4.

On April 10, 2017, Rainier informed Soundkeeper that the pier owner's consent was not the impediment Rainier previously claimed it to be and that Rainier's contractor would soon

have design plans for bringing the pier into compliance that it would share with Soundkeeper by April 17. *Id.*, ¶ 8.  On April 17, Soundkeeper inquired as to the status of the engineering plans, but Rainier did not respond.  *Id*.  Only after receiving another letter from Soundkeeper threatening to file a motion with the Court did Rainier finally produce its contractor's bid for the pier work. *Id.* ¶ 9. The bid post-dates the Consent Decree's deadline for that work to be complete by nearly a year. *Id.*, Ex. 5.  Similarly, Rainier did not obtain basic engineering calculations for pier stormwater volumes or apply for a permit to discharge to the sanitary sewer until July 13, 2017 – over a year after the Consent Decree's deadline for completing the pier work. *Id.,* ¶ 9. Rainier even rebuffed its contractor's offer to get the work moving in May, stating that Rainier preferred to push it out into August, 2017.  *Id.,* Ex. 6.

### IV.     LEGAL BACKGROUND

Clean Water Act consent decrees are judgments which may be enforced by judicial sanctions in a civil contempt proceeding. *Las Vegas v. Clark Cty.*, 755 F.2d 697, 701 (9th Cir. 1984); *Nw. Envtl. Def. Ctr. v. H&H Welding*, No. 3:13-cv-00653-AC, 2015 U.S. Dist. LEXIS 162182, at *43 (D. Or. Oct. 13, 2015). *See also Nehmer v. U.S. Dept. of Veterans Affairs,* 494 F.3d 846, 860 (9th Cir. 2007) ("It is well established that the district court has the inherent authority to enforce compliance with a consent decree that it has entered in an order, to hold parties in contempt for violating the terms therein"); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.")

"District courts have broad equitable power to order appropriate relief in civil contempt proceedings." *F.T.C. v. EDebitPay, LLC*, 695 F.3d 938, 943 (9th Cir. 2012).  Such proceedings and relief arise from "the court's desire to compel obedience to a court order or to compensate

MOTION TO ENFORCE CONSENT DECREE - 6

the contemnor's adversary for the injuries which result from the noncompliance." *United States v. Bright*, 596 F.3d 683, 695-96 (9th Cir. 2010). Accordingly, civil contempt sanctions are appropriate to compensate the movant or to coerce future compliance with the Court order. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).

A district court's civil contempt order is reviewed for an abuse of discretion, and its findings of fact in connection with a civil contempt adjudication for clear error. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).

### V.   ARGUMENT

**A.   <u>Standards for Civil Contempt.</u>**

The Ninth Circuit defines civil contempt to mean a "party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). To justify civil contempt, the moving party must establish "(1) that [the alleged contemnor] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *United States v. Bright,* 596 F.3d 683, 694 (9th Cir. 2010). With this test satisfied, the burden shifts to the alleged contemnor to demonstrate why it was unable to comply. *FTC v. Affordable Media*, LLC, 179 F. 3d 1228, 1239 (9th Cir. 1999). *See also id.* at 1240-41 (the movant does not bear the burden of showing that the non-movant has the capacity to comply with the Court's order).

The disobedience "need not be willful," and there is no good faith exception to the requirement of obedience to a court order. *In re Dual-Deck Video*, 10 F.3d at 695. Technical or inadvertent violations are also not a defense to contempt if the defendant has failed to take all reasonable steps to compliance. *Cmty. Ass'n for the Restoration of the Env't v. Nelson Faria*

*Dairy, Inc.*, No. CV-04-3060-LRS, 2011 U.S. Dist. LEXIS 149868, at *5-6 (E.D. Wash. Dec. 30, 2011) (citing *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986)). Similarly, that a defendant "may sincerely believe it improved the [facility] through changes it made and in doing so, complied with the 'spirit' of the Consent Decree" "is not adequate." *Nelson Faria Dairy, Inc.*, 2011 U.S. Dist. LEXIS 149868, *6.

Unlike a remedy ordered by the Court, a party does not have an equitable defense to a violation of a consent decree. *Id.* (citing *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999)). Rather, "'the only defense to a violation of a consent decree must be found within the four corners of the decree.'" *Id.*

### B. Rainier Is In Substantial Violation of the Consent Decree.

Rainier has and continues to violate paragraph 7(f) of the Consent Decree by failing to eliminate stormwater discharge points from its portion of Pier 15 directly into Elliott Bay after the June 30, 2016 deadline. E.g., Kinn Decl., ¶ 18; Tonry Decl., Ex. 1. This fact is not in dispute.

Rainier's ongoing discharge of toxic stormwater pollution from the pier is a significant violation of the Consent Decree and thus it is not in substantial compliance with the Consent Decree. *Nelson Faria Dairy, Inc.*, 2011 U.S. Dist. LEXIS 149868, *3-*5 (violations that merely threaten to cause polluted discharges go beyond a "few technical violations" and do not amount to "substantial compliance") (citing *In re Dual-Deck Video*, 10 F.3d 693, 695). Abating stormwater pollution from the dock was a central issue for Soundkeeper throughout the litigation. *See, e.g.,* Dkt. #75 at 20, 23-24; Dkt. #92 at 21. Indeed, as Soundkeeper feared, the dock discharges are the most polluted discharges ever sampled at Rainier's facility and grossly exceed the levels that are protective of Soundkeeper's interests. *Compare* Tonry Decl., Ex. 1 *and*

Dkt. 21 at 9-10. *See also* Dkt. #75 at 41 (finding that less polluted discharges from the facility violate water quality standards in Elliott Bay.)

C.     **Rainier Petroleum's Ongoing Violation Is Not Excused by Any Force Majeure.**

Rainier has indicated to Soundkeeper that it will argue that its violations are excused because the pier owner's and sewer authority's tepid response to the necessary infrastructure work somehow constitute force majeure. However, there has been no force majeure event, and even if there had been, Rainier has not satisfied the procedural and substantive requirements of the Consent Decree's force majeure provision.

Paragraph 10 of the Consent Decree defines a force majeure event as "any event outside the reasonable control of Rainier that causes delay in performing tasks required by this decree that cannot be cured by due diligence." Dkt. #100 at 7. Paragraph 10 provides that:

> Delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that Rainier notifies Soundkeeper of the event; the steps that Rainier will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task. Rainier will notify Soundkeeper of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

*Id.* at 7-8.

As a threshold matter, Rainier cannot identify any event outside its control that caused delay that could not be cured by due diligence. It has merely asserted, without documentation or detail, that the pier owner did not immediately give Rainier permission to upgrade the pier when Rainier first mentioned the subject. Tonry Decl., ¶ 6. Rainier belatedly exercised some diligence in its request, the owner granted it permission. *See id.,* ¶ 8. The problem was that Rainier waited until early 2017 – six months after the pier work should have been complete – to engage an

MOTION TO ENFORCE CONSENT DECREE - 9

engineer to begin to develop a plan for the pier owner to meaningfully consider. *Id*., ¶¶7, 9  To make matters worse, Rainier took several more months to obtain a contractor's bid and plan for the pier modifications and waited another six weeks to even apply for permission to discharge the pier stormwater to the sanitary sewer. *Id*., ¶ 9.  Thus, the pier owner's initial hesitance – if in fact there was any –  cannot be said to be outside Rainier's control, nor the cause of the delay, nor something that could not have been cured by due diligence.

Rainier has also failed to satisfy the conditions required for a force majeure event to excuse a failure to comply with the Consent Decree.  Specifically, it did not notify Soundkeeper of: (1) a force majeure within fifteen days of the occurrence of the purported force majeure event; (2) the steps it would take to comply with paragraph 7(f) of the Decree; or (3) the projected timeline for completion. Tonry Decl., ¶ 11; Kinn Decl., ¶¶ 16-17; *United States v. Pflueger*, No. 06-00140 BMK, 2007 U.S. Dist. LEXIS 46784, at *6 (D. Haw. June 27, 2007) (rejecting force majeure defense where defendant did not comply with the consent decree's 72-hour notice requirement).  Rainier first alluded to the *potential* for a force majeure event to arise in an email sent months after ExxonMobile purportedly indicated it would not consent to pier modifications.  Kinn Decl., ¶ 9.  Rainier failed to send this email to Soundkeeper's outside counsel, as is required for notifications under the Consent Decree. *Id.*; Tonry Decl., ¶ 11; Dkt. #100 at 17-18 (requirements for notifications required by the Consent Decree). Moreover, when the parties met in January 2017, Rainier had no plan for coming into compliance much less a timeline with specific steps. Tonry Decl., ¶ 5; Kinn Decl., ¶ 17.

Finally, even if Rainier had satisfied all of the foregoing conditions, its performance would still be delinquent because the time for Rainier to come into compliance with paragraph 7(f) of the Consent Decree would only "be extended for a reasonable time following the force

MOTION TO ENFORCE CONSENT DECREE - 10

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

majeure event." Dkt. #100 at 8. Rainier's failure to obtain a contractor's plan and bid and apply for a sewer permit until recently have resulted in unreasonable delay in controlling polluted pier discharges well beyond any delay arguably associated with third parties. Rainier even rejected its contractor's offer to begin work in May 2017 to avoid further delay. Tonry Decl., Ex. 6.

### D.  The Court Should Impose Monetary Sanctions Against Rainier Petroleum.

The Court should impose monetary sanctions against Rainier to purge its contempt and hasten compliance with the Consent Decree. Specifically, the Court should order Rainier to pay (1) $50,000 to the Rose Foundation to fund environmental restoration projects to help purge its current contempt, and (2) $10,000 per month to the Court for each month it fails to come into compliance beyond September 30, 2017, the onset of the rainy season.

The requested compensatory and coercive sanctions are appropriate and within the Court's discretion. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d at 1380; *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983). One purpose of civil contempt is to compensate the "the contemnor's adversary for the injuries which result from the noncompliance." *United States v. Bright*, 596 F.3d at 695-96. Here, Soundkeeper's injuries stem from damage to water quality in Elliott Bay. This harm is irreparable but can be somewhat remedied through restoration projects like those described in the Rose Foundation's letter attached to the Consent Decree. Dkt. #100 at 13. $50,000 would fund two water quality improvement projects. Rose Foundation, Puget Sound Stewardship & Mitigation Fund, https://rosefdn.org/puget-sound-stewardship-mitigation-fund.

Sanctions that recoup Rainier's economic benefit from further delaying compliance and deter future violations are also directly in line with the Clean Water Act's penalty provisions. 33

U.S.C. §§ 1319(d) (courts should consider the economic benefit of noncompliance when setting a penalty); *Idaho Conservation League v. Atlanta Gold Corp.*, 879 F. Supp. 2d 1148, 1167 (D. Idaho 2012) (extracting a polluter's financial gains from delayed compliance expenditures is an important first step); *Catskill Mtns.. Ch. of Trout Unltd., Inc. v. City of New York, New York*, 244 F.Supp.2d 41, 48 (N.D. N.Y. 2003); *and see Tull v. United States*, 481 U.S. 412, 422 (1987); Dkt. #92 at 11.  Soundkeeper estimates that Rainier has enjoyed an economic benefit of well over $162,000 for its violations associated with pier discharges, at least $19,200 of which is attributable to the last year of Consent Decree violations.  Tonry Decl., Ex. 7.[1]  To help purge Rainier's contempt, the Court should purge this reward for violating the Consent Decree.

E. **The Court Should Award Soundkeeper Its Enforcement Costs.**

Paragraph 11 of the Consent Decree provides that Soundkeeper should be awarded its costs, including attorneys' fees, if it is a prevailing or substantially prevailing party in any proceedings to enforce the Consent Decree, as those terms are defined under the Clean Water Act's citizen suit provision.  Dkt. #100 at 8-9.  Even if the Consent Decree did not specifically provide for fee recovery, an award of attorney's fees and costs for civil contempt is within the discretion of the court. *Harcourt Brace v. Multistate Legal Studies*, 26 F.3d 948, 953 (9th Cir. 1994). A finding of willfulness is not required. *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). Thus, as one feature of any remedy for contempt, the Court should award Soundkeeper

---

[1] Jonathan Shefftz, Soundkeeper's economic expert in this litigation calculated that Rainier's economic benefit from delaying implementation of a stormwater collection and conveyance system on the pier until December 31, 2015 was $46,915. *Id.* at 19. However, that calculation was based Soundkeeper's engineering expert's estimate that such a system would cost $208,257, whereas Rainier's recent bids put this cost at over $575,400.   Proportionately increasing Shefftz's calculation to reflect the increased up-front cost (Tonry Decl., ¶9), passage of another year and a half, and adding in the avoided cost of sampling pier discharges into 2016 indicates that Rainier has enjoyed an economic benefit of well over $162,000 for its violations associated with pier discharges since April 2009.

MOTION TO ENFORCE CONSENT DECREE - 12

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

compensation for its attorneys' fees and expenses. *Id.* ("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order.").

**F.      Modifications to the Consent Decree Should Be Made in Soundkeeper's Favor.**

The Court should modify the Consent Decree as needed to ensure it accomplishes its intended result. *Nelson Faria Dairy, Inc.*, 2011 U.S. Dist. LEXIS 149868 at *28-30. Specifically, Soundkeeper proposes two modifications: (1) as an alternative to diverting pier runoff to the sewer system, allow Rainier to discharge pier stormwater to Elliott Bay if it is first treated in the facility's advanced stormwater treatment system, and provided that the treatment system is augmented to handle the increased flow volume; and (2) extend the Consent Decree's termination date to one year following Rainier's compliance with paragraph 7(f). *Nelson Faria Dairy, Inc.*, 2011 U.S. Dist. LEXIS 149868 at *30 (defendant's consent decree violations justified a temporal extension of the decree).  The first requested modification would achieve Soundkeeper's original goal of having the pier runoff treated by Rainier rather than shunted onto the overtaxed public sewer system, and would eliminate potential delays associated with sewer permitting.  The second requested modification will facilitate the Court's and Soundkeeper's oversight of the facility and achieve the Consent Decree's intent of having Rainier forward permit compliance documents to Soundkeeper for approximately a year after all facility improvements are complete. *See* Dkt. #100 at 6-7 (¶ 8).

## VI.    CONCLUSION

For the foregoing reasons, Soundkeeper respectfully requests that the Court find Rainier in contempt and impose sanctions to remedy the ongoing violations of the Consent Decree and the Clean Water Act.

MOTION TO ENFORCE CONSENT DECREE - 13

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

RESPECTFULLY SUBMITTED this 27th day of July, 2017

        Smith & Lowney, pllc
By: *s/Claire E. Tonry*
Knoll D. Lowney, WSBA No. 23457
Claire E. Tonry, WSBA No. 44497
Attorneys for Plaintiff
2317 E. John St.
Seattle, WA 98112
Tel: (206) 860-1394
Fax: (206) 860-4187
E-mail: knoll@smithandlowney.com; claire@smithandlowney.com